## UNITED STATES v. GANO-MOORE CO.

### THE ARIZPA.

District Court, E. D. Pennsylvania.
June 25, 1929.

No. 143 of 1923.

See, also, 35 F.(2d) 398.

M. H. Avery, of Washington, D. C., and George W. Coles, U. S. Atty., of Philadelphia, Pa., for the United States.

C. W. Van Artsdalen, of Philadelphia, Pa., for respondent.

KIRKPATRICK, District Judge. This is a libel by the United States, owner of the steamship Arizpa, against the charterer, to recover an alleged excess of dispatch moneys deducted by the respondent in making payment of freight on the cargo. The libelant admits that the respondent earned certain dispatch moneys, but not the amount deducted.

I find the following facts from the allegations of the libel, the admissions of the answer, and documents in evidence:

The Arizpa arrived at Hampton Roads on April 22, 1920, reported readiness at 9 a. m. April 23, and was in readiness to receive cargo on that hour and day. Loading commenced at 10:10 a. m. April 23, and was completed at 10 p. m. April 24. The cargo taken on consisted of 6,996 tons of coal. The charter party contains the following provisions relating to lay days, demurrage, and dispatch: "Lay days for loading, if required by the party of the second part, not to commence before 96 hours after steamer is ready. * * * Cargo to be loaded into steamer with customary dispatch, in accordance with the rules of the port of loading, but in no case at less than 1,500 tons per running day, Sundays and legal holidays excepted. * * * Also, that for each and every day said steamer is on Demurrage at either loading or discharging port, the party of the second part, or agent, shall pay to the party of the first part, day by day, demurrage at the rate of 48 cents gross registered ton of steamer per running day, or pro rata part of a day. Dispatch at rate of 16 cents per gross registered ton

and both demurrage and dispatch not reversible."

The first question raised by the respondent is whether the United States is the proper party libelant. This court has already decided [U. S. v. Courtright-Dimmick Co. (The Chester Kiwanis) 28 F.(2d) 142, 1928 A. M. C. 1233] that the United States may maintain an action in its own name upon a charter party executed in its behalf by a duly authorized managing and operating agent of the Fleet Corporation. This charter party was executed in substantially the same manner as in the case referred to, and it follows that the United States is a proper party libelant in this cause.

The libel alleges that the respondent is a Pennsylvania corporation. The answer denies this, and avers that the respondent is a Delaware corporation. Though no testimony was taken upon this point, the fact is immaterial. The designation of the state of incorporation is not part of the corporate title, and if it is wrongly set forth in the libel the error is of no importance, there being no suggestion that the respondent has not been brought into court properly by process.

The respondent has two defenses upon the merits, each supporting the retention of a portion of the retained dispatch money. The first is that in fixing the dispatch money the charterer is entitled to 96 hours free time, although not required or taken. The clause under which this is claimed is "lay days for loading if required by the party of the second part, not to commence before 96 hours after the steamer is ready to load." This clearly means that the charterer is to have the 96 hours free time only if required. In this case it was not required, since the Arizpa was docked and loading commenced 1 hour and 10 minutes after reporting readiness. I therefore allow 1 hour and 10 minutes of free time.

The other defense raises a rather close question. The charterer (respondent) takes the position that Sundays and holidays are to be paid for as dispatch. The dispatch clause here is quite short, being merely, "dispatch at the rate of 16 cents per gross registered ton and both demurrage and dispatch not reversible." The lay day clause excepts Sundays and holidays from the computation of lay days. In Royal Mail Steam Packet Co. v. River Plate Steamship Co., 79 L. J. K. B. 673, [1910] 1 K. B. 600, 11 Aspinall N. C. 372, the provision for lay days, as in the case now before the court, excepted Sundays and holidays. The dispatch clause was, "The owners of the ship to pay £10 per day dispatch money for each running day saved." The demurrage clause was, "All or any days on demurrage over and above the said lay days shall be paid for," etc. In construing the dispatch clause, the court noted the conflict which existed in the English decisions and said: "I think the words 'lay days' mean consecutive days, and I do not think that because the charter party says that holidays and week-ends are for the purpose of loading and discharging to be excepted from the running days, that is a definition of 'running day.' For the purpose of demurrage, the running days include the Sundays and week-ends, and I think that for the purpose of calculating dispatch money they must also be counted, as they are days saved to the ship owners. My judgment must be for the charterers."

In the case now before the court, the dispatch clause does not refer to "running days," nor does it provide that dispatch is to be paid for days "saved." However, the demurrage clause, which is included in the same paragraph with the dispatch clause, does refer to running days, and, if we apply the reasoning of the court in the Royal Mail Steam Packet Co. Case, it would follow that the demurrage is payable for each running day, without regard to whether Sundays or holidays occur in the demurrage period. The natural inference would be that the dispatch clause would be governed by the same construction.

In Mawson Shipping Co. v. Beyer, 83 L. J. K. 290, [1914] 1 K. B. 304, 12 Aspinall N. C. 423, a case in which the dispatch clause referred to payment of dispatch for all time "saved in loading," the presumptions applicable are stated as follows: "(1) Prima facie the presumption is that the object and intention of these dispatch clauses is that the shipowner shall pay to the charterer for all time saved to the ship, calculated in the way in which, in the converse case, demurrage would be calculated—that is, taking no account of the lay day exceptions. Laing v. Holloway, supra, and Royal Mail Steam Packet Company v. River Plate Steamship Company, supra. (2) This prima facie presumption may be displaced, and displaces where either (i) lay days and time saved by dispatch are dealt with in one clause and demurrage in another clause (The Glendevon, supra [1893] P. 269); (ii) lay days, time saved by dispatch, and demurrage are dealt with in the same clause; but upon the construction of that clause the court is of the opinion, from the collocation of the words, or

other reason, that the days saved are referable to and used in the same sense as the lay days so described in the clause, and are not referable to or used in the same sense as days lost by demurrage. Nelson v. Nelson Line, supra."

Here lay days are dealt with in one clause, dispatch and demurrage in another, and I see nothing in the collocation of the words, or otherwise, to indicate that the days saved, for which dispatch is payable, are used in the same sense as the lay days, as described in the lay day clause. On the contrary, the whole arrangement of the clauses of this charter party indicates that they are used in the same sense as the days lost by demurrage, and, under the principle stated in the Royal Mail Steam Packet Case, those days take no account of Sundays and holidays. On this point, therefore, I think the position of the charterer (respondent) is well taken.

The computations of the parties under their respective contentions are set forth in the libelant's brief, and may be included here for purposes of convenience*

As a result of the conclusions reached, in addition to the 3 days, 14 hours, and 6 minutes which the libelant concedes to be the proper dispatch period, the holidays (that is, two hours Saturday, April 24, and 24 hours on Sunday, April 25) are to be added, making a total of 4 days, 16 hours, 6 minutes. The dispatch for this period of 4 days, 16 hours, and 6 minutes is $4,476.52. As the respondent deducted as dispatch $7,341.18, the libelant is entitled to recover $2,864.66.

Decree for libelant in accordance with the foregoing opinion, including interest and costs.

---

**\*Libelant's Lay Day Statement.**

6996 tons of coal loaded; lay time is 4 d., 16 h., 56 m.

### Free Time.

d. h. m.

Apr. 23, Fri. 0 1 10 Free time commences with reporting readiness at 9 a. m. Free time ends 10:10 a. m. with commencement of loading.

### Lay Time.

d. h. m.

Apr. 23, Fri. 0 13 50 Loading commences 10:10 a. m.

Apr. 24, Sat. 0 12 0 Load completed 10 p. m.

Apr. 25, Sun. 0 0 0

Apr. 26, Mon. 1 0 0

Apr. 27, Tue. 1 0 0

Apr. 28, Wed. 1 0 0

Apr. 29, Thr. 0 14 6 Lay time ends 2:06 p. m. Apr. 29.

4—15—56

Loading was completed 10 p. m. Sat. Dispatch commences 12:01 a. m. Monday Apr. 26, 1920, and extends to 2:06 p. m. Apr. 29, for a period of 3 d. 14 h. 6 min.

The dispatch money for this period is $3,438.26. The 2 h. on Saturday and 24 hrs. on Sunday, Apr. 25, are excluded from dispatch as explained later in the brief. At a rate of 16¢ per gross ton and with the Arizpa's gross tonnage of 5990 tons, the daily dispatch rate is $958.40.

**Respondent's Lay Day Statement.**

6996 tons of coal loaded; lay time is 4 d., 15 h., 56 m.

### Free Time.

d. h. m.

Apr. 23, Fri. 0 15 0 Readiness reported 9 a. m. free time commences.

" 24, Sat. 1 0 0 Loading completed 10 p. m.

" 25, Sun. 1 0 0

" 26, Mon. 1 0 0

" 27, Tue. 0 9 0 Free time ends 9 a. m. Apr. 27.

### Lay Time.

d. h. m.

Apr. 27, Tue. 0 15 0

Apr. 28, Wed. 1 0 0

Apr. 29, Thr. 1 0 0

Apr. 30, Fri. 1 0 0

May 1, Sat. 0 12 0

May 2, Sun. 0 0 0

May 3, Mon. 0 12 56 Lay time ends 12:56 p. m. May 3.

4—15—56

Respondent claims for dispatch from the completion of loading at 10 p. m. Saturday, April 24, to 12:56 p. m. May 3, or 8 d. 14 h. 56 m. However in making deduction of dispatch moneys from the freight paid, respondent claimed only for 7 d. 15 h. 52 m. and deducted $7,341.18. By later correspondence, not part of this record, respondent corrected this error and advanced claim for 8 d. 14 h. 56 m. which is the correct dispatch period, if respondent's interpretation of the charter party is sustained in all respects.